*Moncure, P.,
delivered the opinion of the court.
This case has been argued with a great deal of learning, research and ability by the counsel on both sides; who have cited a great many authorities in support of their respective views. But, in the view we take of the case, it depends upon a few plain principles which admit of no contradiction, *494 and which require no citation of authority to sustain them.
Certainly a person can, lawfully, give an. estate to another person for his life, and at his death to the person or persons who may then answer the description of heir or heirs at law of such other person, to be taken by him or them by purchase, and not by descent.
However the law may have favored, and may even yet favor, the application of the rule in Shelley’s case, where it can be properly applied, its application may certainly be avoided by the donor of the estate, if he choses to do so and expresses his intention to that effect in plain and unmistakable language in the deed by which the estate is conveyed.
Whether he has done so in any given case, depends therefore upon his intention to do so, and his plainly expressing that intention in such case.
Of course he cannot abrogate a rule of law, or prevent its application to a proper case, however plainly he may express his intention to do sq. The rule in Shelley’s case is a rule of law, which in its application is generally, if not necessarily, contrary to the apparent intention of the author of the estate. It therefore overrules, or is paramount to such apparent intention.
The rule, as it seems to be correctly laid down in 2 Jarm. on Wills, 241, simply is, “that where an estate of freehold is limited ,to a person, and the same instrument contains a limitation, either mediate or immediate, to his *heirs or the heirs _ of his body, the word heirs is a word of limitation — i. e., the ancestor takes the whole estate comprised in this term. Thus, if the limitation be to the heirs of his body, he takes a fee-tail; if to his heirs general, a fee simple.”
Now the gift of an estate for life to the first taker, however plainly and expressly given, is not at all in conflict with the application of the rule. On the contrary, it is one of the two conditions which the rule contemplates and requires; and it exists in almost every case to which the rule applies. It cannot, therefore, be properly said that an intention in the author of the instrument to give a life estate to the first taker is at all in conflict with the rule. The other of the two conditions is, that at the termination of the freehold or life estate given to the first taker, the estate is limited by the same instrument to go to his heirs or the heirs of his body — the word “heirs” being used in its technical sense, to comprehend all his heirs forever. In such case the rule applies, and is paramount to the intention of the testator, either in regard to the latter or the former condition of the rule. But the question in such cases is, whether the limitation was intended to be “to his heirs or the heirs of his body” forever — that is, to the whole line of heirs of the first taker, or only to certain persons intended to be described by the use of those terms.
Sometimes, we know, that the word “heirs” is used in an instrument, and especially a will, to describe “children” or “issue,” or some particular class of heirs; and sometimes the word “children,” or some other word, is used to describe “heirs.” This is a question of intention, depending on the terms of the instrument, construed altogether and in connection with the surrounding circumstances, or such of them as may be admissible evidence upon such _ a question. In deciding the _ question *great weight must be given to the technical meaning of the word “heirs,” which must be presumed to have been intended to be used in such technical sense in the absence of evidence of a plain intention to the contrary.
If the word “heirs” was intended to be used in its technical sense, then the rule applies, and there is an end of the question in the case. But if the word was intended to be used as a description or designation of particular persons who were to take by purchase, in contradistinction to those who would take by inheritance, as “heirs forever,” then clearly the rule in Shelley’s case does not apply; and the persons thus described as remaindermen are entitled to take by purchase.
The foregoing are the rules, which, in our opinion, apply to this case, and govern and conclude it, and according to them, the court is of opinion, that the donor, John Donagh'ee, intended to give the land in controversy in this case to his grandson, Thomas J. D. Reilly, for and during his life only; and after his death, to such person or persons as should, at that time, answer the description of heir or heirs at law of the said Thomas J. D. Reilly; such person or persons to take the said land under that description as purchasers under and by virtue of the deed by which the gift was made, to-wit: the deed of the 28th day of July, 1821, in the proceedings mentioned,' and not by inheritance as heirs of the said Thomas J. D. Reilly, upon the terms and conditions referred to in said deed; and that such intention is plainly expressed in said deed.
The court is therefore of opinion that as the defendants in error, at the time of the death of the said Thomas J. D. Reilly, answered the description of his “heirs at law,” they were entitled to take the said land as purchasers under and by virtue of the said deed, and not by inheritance as heirs of the said Thomas J. B. Reilly, and were *entitled to recover the same in the action of ejectment brought by them therefor against the plaintiff in error, and there is no error in the judgment of the court below in the said action.
Therefore, (without expressing any opinion in regard to the condition in restraint of alienation mentioned in the said deed, and the effect of the supposed breach thereof, it being unnecessary, in the opinion of the court, to decide in this case any question concerning the same), it is considered that the said judgment be affirmed, and that the defendants in error recover against the *495 plaintiff in error thirty dollars damages, and their costs by them about their de-fence in this behalf expended; which is ordered to be certified to the corporation court of the city of Norfolk.
After the decision of the court, the appellant asked for a rehearing of the cause.
Moncure, P.,
delivered the opinion of the court.
The learned counsel for the plaintiff in error seems to concede that the decision of the court in this case would have been perfectly right but for the act of 1785, which declared that “every estate in lands which shall hereafter be granted, conveyed or devised to one, although other words heretofore necessary to transfer an estate of inheritance be not added, shall be deemed a fee simple, if a less estate be not limited by express words, or do not appear to have been granted, conveyed or devised by construction or operation of law.” This has in substance been the law of the state ever since its first enactment, in .1785. In 1 R: C. 1819, p. 369, ch. 99, § 27, the same language is used as in the original act of 1785.
In the Code of 1873, p. 889, ch. 112, § 8, the ^language is: “When any real estate is conveyed, devised or granted to any person without any words of limitation, such devise, conveyance or grant shall be construed to pass the fee simple or other the whole estate or interest which the testator or grantor had power to dispose of in such real estate, unless a contrary intention shall appear by the will, conveyance or grant.”
In his printed argument in support of his motion for a rehearing in this case (p. 5), the learned counsel uses this language: “Accepting, then, the principles which to me while hearing its opinion read, the court appeared to lay down, and which I clearly conceived to be the true principle, I thought my client (until at last I heard the decision announced against him) sure of gaining his cause, although upon the same principles he would have been sure to lose it had it depended upon English law, or upon Virginia law prior to the statute of 1785, dispensing with words of inheritance (in deeds and wills) to pass a fee simple.” And on páge 6 he uses this language: “Consequently had the deed here in question been made in England, concerning lands there, or made in Virginia while our law was in this regard the law of England unchanged, concerning the very land in question, the rule in Shelley’s case would have had no manner of application; because then the person or persons answering to the description given in the deed of intended remain-dermen, would have taken an estate for life, and no longer, and so the ilmitation in remainder would not have been to the whole line of heirs of the first taker.”
The question, therefore, upon the motion for rehearing, has come down to the single inquiry, whether the effect of the act of 1785, was to create a new instance for the application of the rule in Shelley's case, which did not exist before the passage of that act. In other words, *whether, when the reason for that rule had long since ceased to exist, and it was about to be abolished by the state legislatures of some of the United States, as has been done, nearly if not entirely in this state, it was extended in its operation, without, however, intending or contemplating such extension, by the act of 1785? So far from having that effect and thus defeating the intention both of the legislature and the donor of the estate, the act of 1785 would, if necessary to prevent that effect, be regarded as an implied modification of the rule, so as to make it inapplicable to such a „case. But no such necessity exists.
The court is of opinion that such was not the effect of the act, and such was not the intention or contemplation of the legislature in its enactment.
“If the word heirs,” said the court in its decision of this case, “was intended to be used in its technical sense, then the rule applies and there is an end of the question in the case; but if the word was intended to be used as a description or designation of particular persons who were to take by purchase, in contradistinction to those who would take by inheritance as ‘heirs forever/ then, clearly, the rule in Shelley’s case does not apply, and the persons thus described as remaindermen are entitled to take by purchase.” And the court was of opinion “that the donor, John Donaghee, intended to give the land in controversy in this case to his grandson, Thomas J. D. Reilly, for and during his life only, and after his death to such person or persons as should at that time answer the description of heir or heirs at law of the said Thomas J. D. Reilly, such person or persons to take the said land under that description as purchasers under and by virtue of the deed by which the gift was made, and not by inheritance as heirs of the said Thomas J. D. Reilly, *upon the terms and conditions referred to in said deed, and that such intention is plainly expressed in said deed.”
The word “heirs” may be used as desig-nado personarum with the same effect as any other word. And if it be ascertained by a proper construction of the instrument, who are the persons intended to be designated by that word in the particular instance, the instrument has precisely the same effect as if the persons thus intended to be designated had been described by their Christian and surnames in the instrument. Id certum est, quod certum potest reddi. Suppose they had been so described in the instrument? The act of 1785 would have assured to them an estate in fee simple, although other words theretofore necessary to transfer an estate of inheritance might not have been added to their names in the instrument. Would that have prevented them from taking by purchase, as at common law, and caused them to take by descent under the operation of the act? How would such a case differ in effect from any other *496 case of a gift to persons by name without the addition of words of inheritance to their names? In every such case the donee takes by purchase; the only difference being that at common law he would take a life estate, whereas under the act he would take a fee simple estate by purchase. The rule in Shelley’s case does not affect the question. That rule, when it applies, gives to the first taker an estate in fee, though perforaran doni an estate for life only is given to him. But the effect of the act is to give to the persons designated by the word heirs an estate in fee. simple, instead of an estate for life, to which they would have been entitled at common law under a gift in the same form. The question under the rule in Shelley’s case* is, what is the meaning of the word “heirs” used in the- instrument? Does it mean the whole line of heirs in succession forever; or does it mean only a particular *class of those heirs, or such persons as may happen to answer the description of heirs at a particular time, as at the death of a particular person, as in this case? If it means the former, then the rule in Shelley’s case applies, and the first taker is entitled to the whole estate, though a life estate only is nominally given to him by the instrument. But if it means the latter, then the rule in Shelley’s case does not apply, and the persons who happen to answer the description of such heirs at the particular time designated in the instrument are entitled to the estate as purchasers, and the act in question enlarges that which would have been a mere life estate at common law into an estate in fee simple. Of this effect of the act, the heirs at law of the donor, might, possibly, have- some cause to complain, as they would have been entitled to the estate after the expiration of the life estate of the remaindermen if they had been entitled to a life estate only as at common law; but the heirs at law of the first taker would have had no such cause to complain, as nothing is taken from them by enlarging the common law. life estate of the remaindermen into an estate in fee simple under the act. *,The question as to the application of the rule in Shelley’s case, depends entirely upon whether the word heirs in the instrument is to be construed in its technical sense to embrace all the heirs forever of the first taker, or as a mere designation of particular persons. If the former, then the rule in Shelley’s case applies. If the latter, then it does not apply.
The question is, What did the donor mean by the use of the word “heirs” in the limitation over after the death of the first taker? Did he mean to use it in its technical sense as a word of inheritance, or as a mere designation of certain persons who might answer the description at the death of the first taker?
*The presumption, in the absence of a plain indication of an intention to the contrary, is that he meant to use it in its technical sense; but that presumption may be repelled by such an indication. In this case there is a very plain indication of an intention to use the word, not in its technical sense, but as a mere designatio personarum as aforesaid.
If the word had been used in the former sense, the rule in Shelley’s case would have applied. But as the word was used, not in the former but in the latter sense, the rule in that case does not apply, and the persons answering the description of heirs of the first taker at the time of his death are entitled as purchasers from the donor of the estate, and not as heirs at law of the first taker.
Whether the persons thus taking as purchasers are entitled to a life estate merely, or to a fee simple estate, is wholly immaterial so far as. concerns the application of the rule in Shelley’s case. They may be entitled to either, in perfect consistence with that rule. Whether they are entitled to the one or the other, is a question which does not arise until after the determination of the question whether the word “heirs” in the gift is to be construed in its technical sense as a word of inheritance, or as a mere designation of persons to take by purchase, and not then unless it be determined that the word was intended to be used in the latter sense. „
If the word is to be construed in its technical sense, then it refers to the first taker, who is entitled to a fee simple instead of a mere freehold estate. But if it is to be construed as a mere designation of persons to take by purchase, then it refers only to such purchasers. At common law they would have taken an estate for life only, if no other estate had been indicated by the gift. Our statute of 1785 entitles them to an estate in fee *simple, if no other be indicated by the gift. The first taker is not the stock of the descent created by the statute; but the persons who take as purchasers are the stock of such descent.
The case may be illustrated thus: An estate may be given to a certain person for life, with remainder to certain other persons, either for life or in fee simple, at the election of the donor.
Such remaindermen may be described either by their Christian and surnames, or in any other mode whereby it may be ascertained, with certainty, at the termination'of the life estate, who are the persons then entitled to take the estate in remainder. If the remainder, after the death of the life tenant,.be given to such persons as shall at that time answer the description of his heirs at law, that is a valid gift of a remainder to such persons, who will be entitled, as purchasers, to an estate for life or in fee simple, according to the form of the gift.
Suppose such remainder be expressly given to such persons and their heirs; certainly such persons are entitled as purchasers to take the remainder in fee simple. Suppose such remainder, instead of being expressly given to such persons and their heirs, is given to them by implication. Is not the effect precisely the same in this respect, *497 whether the gift be express or by implication? Certainly it is. And in either case swell persons are entitled, as purchasers, to take the remainder or fee-simple.
Now, is not the gift in remainder in his case, under the operation of the act of. L785, plainly a gift of an estate in fee simple by implication? Certainly it is. The estate in fee-simple is not given to the remain-dermen by law, but by the grant, conveyance or devise of the owner of the estate. The act of 1783 relates merely to the construction of the grant, conveyance or devise. This appears, perhaps, more plainly by the act as it now stands *in the Code of 1873 than by the act of 1785, though the two acts are in substance the same, so far as this case is concerned. In the Code the language is: “When any real estate is conveyed, devised or granted to any person without any words of limitation, such devise, &c., shall be construed to pass the fee simple, or other the whole estate or interest which the testator, &c., had power to dispose of in such real estate, unless a contrary intention shall appear by the will,” &c.
We think there is no error in the decision of the court in this case, and the motion for a rehearing is therefore overruled.
Rehearing refused and judgment affirmed.